UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE ARBITRATION BETWEEN | : |
| | : CIVIL ACTION NO: 1:08-cv-468 |
| | : |
| IDEAL PLASTIC CONTAINER COMPANY | : |
| | : |
| Petitioner, | :     NOTICE AND PETITION TO |
| | :     DISMISS/STAY ARBITRATION |
| | : |
| and | : |
| | : |
| UFCW LOCAL 174 COMMERCIAL HEALTH CARE FUND AND COMMERCIAL PENSION FUND | : |
| | : |
| | : |
| Respondent | : |

Petitioner, Ideal Plastic Container Company ("Ideal" or "Employer") moves for an Order

pursuant to Title 9, United States Code, Section 10 dismissing the arbitration which is brought

pursuant to the terms of a Collective Bargaining Agreement between Local 342 and Petitioner or,

in the alternative, dismissing or staying the arbitration noticed by the Respondents herein for

January 30, 2008 and respectfully alleges:

    1. Petitioner, Ideal, is a corporation duly organized and existing under the laws of the

State of New Jersey, with its principal place of business at 80 South Dean Street, Englewood,

New Jersey.

    2. Respondent, UFCW Local 174 Commercial Health Care Fund and Commercial

Pension Fund, (the "Fund") are unincorporated associations duly organized and existing under

the provisions of E.R.I.S.A. (29 U.S.C. §1001 et seq.), with a principal place of business at 166

East Jericho Turnpike, Mineola, New York 11501.

3. The jurisdiction of this court is invoked under Title 9, United States Code, and particularly Section 10 thereof.

4. On or about December 18, 2006, Petitioner entered into a Collective Bargaining Agreement (the "CBA") with Local 1245 of the United Food & Commercial Workers International Union relating to the terms and conditions of employment of certain of Ideal employees. A copy of the CBA is attached, marked Exhibit 1, and made a part hereof.

5. Article 15 (B) of the CBA provides:

"Notwithstanding any other provision of this Agreement, the parties specifically agree that any claim for failure by any Employer to pay any contribution due under this Agreement to any fund may be made and submitted for arbitration by any party hereto and/or by the Trustees of any Fund to which contributions are to be made pursuant to the provisions of this Agreement upon at least twenty (20) days written notice by certified mail to the last address of the Employer on record with the office of the Fund to which contributions are due and to George Sabatella, P.O. Box 245/254 Neptune Station, Brooklyn, NY 11224 as Arbitrator or to such other Arbitrators the parties here to may select. The award of the arbitrator shall be final and binding and enforceable in any court of competent jurisdiction".

6. Under color of the arbitration clause in the CBA, the Fund served upon Ideal a notice of arbitration before Arbitrator John Kennedy (the "Notice"). A copy of the notice is attached, marked Exhibit 2 and made a part hereof.

7. The Arbitrator identified in Article 15 (B) of the CBA, George Sabatella, is now deceased.

8. According to Article 15 (B) of the CBA, any arbitrator other than George Sabatella is to be selected by the parties. [Emphasis added].

9. The Fund has violated the right of Ideal under the CBA by unilaterally selecting and designating John Kennedy as the Arbitrator for the dispute to which reference is made in the Notice.

10. The arbitration notice seeks arbitration "pursuant to the terms of a a Collective Bargaining Agreement between UFCW Local 342, AFL-CIO (the "Union")" and Ideal Plastics when, in fact, there is no Collective Bargaining Agreement between UFCW Local 342 and Ideal Plastics. There is no contractual obligation with Local 342 and, thus, no right to arbitration.

WHEREFORE, Petitioner moves the Court for an Order dismissing the arbitration which is brought pursuant to the terms of a Collective Bargaining Agreement between Local 342 and Petitioner or, in the alternative, dismissing or staying the arbitration noticed by the Fund for January 30, 2008 before Arbitrator John Kennedy and directing Respondent to engage in a process of selecting an arbitrator jointly with Petitioner.

JONATHAN J. LERNER
JL 2916
STARR, GERN, DAVISON & RUBIN, P.C.
Attorneys for Petitioner
105 Eisenhower Parkway
Roseland, New Jersey 07068
973-403-9200

Dated: January 16, 2008

EXHIBIT"1"

AGREEMENT made and entered into this 8ᵗʰ 18ᵗʰ  day of ~~November~~ December, 200~~3~~ 6 by and between UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, Local 1245 located at 275 Paterson Avenue, Little Falls, New Jersey 07424 (hereafter the "UNION") and IDEAL PLASTIC CONTAINERS COMPANY, 81 South Dean Street, Englewood, New Jersey (hereafter the "EMPLOYER").

WITNESSETH:

WHEREAS, the parties desire to enter into an agreement relating to wages, hours and other conditions of employment for the purpose of establishing and maintaining harmonious relations between them, and to that end, provide for a fair and peaceful adjustment of all disputes which may arise between them,

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties agree as follows:

## ARTICLE 1 -UNION RECOGNITION

The Employer hereby recognizes the Union as the sole collective bargaining agent on behalf of all of its production, shipping, receiving, and maintenance employees and other such employees performing work incidental thereto, employed by the Employer, in its establishment or any and all other establishments now operated, or hereinafter acquired and operated during the term hereof, by the Employer, located at its 100 South Dean Street, Englewood, New Jersey, excluding non-working supervisors and such other categories as are excluded by the Labor Management Relations Act of 1947, as amended.

## ARTICLE 2 -UNION SHOP

(A) It shall be a condition of employment that all employees of the Employer covered by this Agreement, who are members of the Union in good standing on the date of the signing of this Agreement shall remain members in good standing and those who are not members on the date of the signing of this Agreement shall, on or after the sixtieth (60th) day following the date of the signing of this Agreement, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after the date of this Agreement shall, on or after the sixtieth day following the beginning of such employment, become and remain members in good standing in the Union.

(B) All new employees, if and when hired, shall be deemed temporary and on a trial basis for a period of sixty (60) calendar days and thereafter they shall be considered as regular employees. All such new employees shall not be granted the same benefits, terms and working

conditions as regular employees until they shall be required to become Union members as a condition of continuous employment, which shall be on or after the thirtieth day subsequent to the beginning of their employment.

(C) The Employer shall be required to discharge any employee upon notification by the Union to the effect that said employee is not in good standing, within the provisions of the Labor-Management Act of 1947.

<u>ARTICLE 3 -CHECK-OFF OF UNION DUES</u>

(A) Subject to delivery by the Union to the Employer of written irrevocable assignments duly signed by each employee as required by law, the Employer will deduct on a weekly basis in each month from the wages of each employee and remit to the Union monthly, not later than the 15th day of each calendar month, the dues or initiation fee payable by such employee to the Union.

(B) The Employer will cause each monthly remittance to be accompanied by a full list of its employees, noting thereon employees added or removed from the list during the preceding month, the respective dates of such additions and removals and the reasons therefore, and, in the case of an added non-Union employee, also the word "New."

(C) It is agreed between the Employer and the Union that should the Employer fail to comply with the terms of this section, that the Union shall have the right to order a work stoppage of the employees of the Employer, and that such work stoppage shall not be a breach of this contract.

<u>ARTICLE 4 -HOURS</u>

(A) Forty (40) hours shall constitute a standard work week, which shall be divided into eight (8) hours per day (Monday through Friday inclusive) for all employees.

(B) The standard work day shall be nine (9) consecutive hours, with one (1) hour off for lunch, the lunch hour being not later than five (5) hours after starting time.

With the consent of the Union, the Employer may schedule staggered lunch periods where required in order to protect the production schedule and raw materials or perishable merchandise.

(C) All work performed after eight (8) hours of work shall be considered overtime and shall be paid for at the rate of time and one-half the regular rate of pay.

(D) Overtime, when available, is to be distributed among all employees as equally

as possible. The Employer shall notify its employees by the lunch break if they are to be required to work overtime on that day and by the lunch break on Friday if they are required to work on Saturday. Shorter notice may be given only in the event of unforeseen circumstances not within the control of the Employer. No employee shall be required to work more than reasonable hours of overtime, Monday through, Friday.

(E) Providing that the employee has worked or been paid for the first five (5) days of the work week, the first eight (8) hours of work performed on Saturdays shall be paid at the rate of time and one-half. All work performed over eight (8) hours on Saturdays shall be paid at the rate of double time.

(F) Employees shall not be required to work on Sundays or the holidays set forth in Article 8, except as provided in paragraph G of this Article. If an employee agrees to work on a Sunday or holiday, or if an employee is called in to work on a Saturday, the Employer guarantees four (4) hours work on such days, or four (4) hours pay in lieu thereof, at the rate of pay called for on such days.

(G) Weekend Overtime - During the period where the Employer works seven (7) days per week, weekend overtime shall be posted by Thursday mid shift. The shop steward shall seek voluntary workers in order of seniority. In the event insufficient workers volunteer, volunteers shall be sought from Supreme Oil. If the Employer's staffing needs are not met, the Employer may require Ideal workers to work the overtime in inverse order of seniority. Inverse order of seniority shall be rotated each time overtime is required. If an employee commits to working or is required to work and fails to appear without good and sufficient reasons, there shall be discipline. Discipline shall be no overtime for two (2) weeks for the first offense; no overtime for one (1) moth for the second offense; and suspension for the third offense.

(H) All employees shall be granted a fifteen (15) minute rest period within the first three (3) hours worked.

## ARTICLE 5 -WAGES

(A) There shall be no wage reduction in any case where employees receive higher wages than those provided for in this Agreement. All employees covered by this Agreement shall receive no less than the minimum weekly or hourly rates for all job classifications as set forth herein in Schedule A attached hereto.

(B) All employees who have completed progression shall receive the following wage

increases as follows:

Effective July 1, 2003 6        $.30 5 per hour *
Effective July 1, 2004 7        $.25 per hour
Effective July 1, 2005 8        $.20 5 per hour

All straight time retroactivity is to be paid on or before December 22, 2006.
All overtime retroactivity is to be paid on or before January 19, 2007.

NEW HIRES:

Anyone hired after July 1, 1997 with respect to wages -will be put on a two year
progression.

(C) No employee shall suffer a reduction in pay because of a transfer from one job to
another. Employees who are temporarily switched from a lower paid position to a higher paid
position shall receive the higher rate of pay for the job to which they are switched for all hours
worked on that job.

(D) An employee who is injured in the course of his regular employment and who
as a result of such injury shall be unable to continue work for the remaining part of the day shall
receive eight (8) hours straight time pay for such day, provided that the employee present to the
Employer a certificate of a duly licensed physician who examined the injury, stating that the
employee was unable to continue work on .that day because of said injury.

ARTICLE 6 -SHIFTS, PREMIUM PAY AND ADDITIONAL SHIFTS

(A) All employees employed on a regular scheduled second shift shall receive a
premium of forty cents (.40¢) per hour over the scheduled minimum hourly day rates for their
respective classifications. All employees on a regular scheduled third shift shall receive a
premium of sixty cents (.60¢) per hour over the scheduled minimum hourly day rates for their
respective classifications. This premium shall also apply to the holiday pay of any employee who
has worked on such night shift for one or more months immediately preceding a paid holiday,
and to the vacation pay of any employee who has worked on such night shift for one or more,
months immediately preceding his vacation. Night shift employees whose shift includes hours
worked on a Sunday or holiday shall receive the appropriate Sunday or holiday premium in lieu
of the night shift premium for the hours worked on a Sunday or holiday. A night shift employee
whose fifth (5th) day normally includes work performed on a Saturday shall not receive any
Saturday premium for the hours worked on a Saturday, but shall receive his or her regular night
shift premium.

- 4 -

Night Differential for employees hired after ~~7/1/03~~ 11/30/06 shall be:

2nd shift.............................................................................. 25¢ per hour premium

3rd shift.............................................................................. 50¢ per hour premium

(B)The present starting time for all regularly scheduled night shifts now in effect shall be maintained and no change shall be made without the mutual consent of the Employer and the Union. The Employer shall have the right to institute regular additional shifts, provided that the Employer shall negotiate with the Union with regard to the establishment of such shifts and the rates of pay and hours of anyone who may be employed on such additional shift.

(C) No employee shall be transferred from a regular day shift or night shift or additional shift without his or her consent unless no qualified employee consents; in such case, transfer shall be made as the Employer's manning and staffing requires in inverse order of seniority. If the Employer operates more than one regular shift and thereafter an opening occurs on the day shift, the Employer must present to all employees working on an additional shift (in order of their seniority) an opportunity to accept employment on the day shift, employees who are employed on a regular night shift or additional shift (in order of their seniority) shall have the first right to fill such vacancy before any new employees are hired.

## ARTICLE 7 - GUARANTEED WORK DAY

Employees regularly scheduled for full shift work shall be given eight (8) hours work or the monetary equivalent thereof unless notified on the previous day not to report, except in case of power failure, acts of God or other such circumstances beyond the Employer's control. This provision shall not apply to part- time or premium work.

## ARTICLE 8 - VACATIONS

(A) All employees who have been in the employ of the Employer for the periods of time specified below shall receive a vacation with pay in advance, at the regular rate being paid at the time of such vacation, in accordance with the following schedule:

| | |
|---|---|
| Upon completion of one (1) full year | 1 week |
| Upon completion of two (2) full years but less than ten (10) full years | 2 weeks |
| Upon completion of ten (10) full years but less than twenty (20) full years | 3 weeks |

- 5 -

| | |
|---|---|
| Upon completion of twenty full years but less than thirty (30) full years | 4 weeks |
| Upon completion of thirty (30) years | 5 weeks |

Employees who have worked more than sixty (60) days but less than one (1) year shall receive a vacation proportionate to the part of the year worked retroactive to the date of hiring.

Vacation pay shall be at the employee's rate of pay in effect at the time of the employee's vacation and shall be paid to the employee with the last payroll check prior to the employee's vacation.

(B) Such vacations shall be given during the months of April, May, June, July, August, September, and October, except that with the consent of the Union, vacation may be scheduled at other periods of time where the Employer's business is of a seasonal nature or other pressing circumstances so require. All employees shall be entitled to the set vacation, whether or not they shall have been employed by the Employer continually or accumulatively for the period required.

(C) An employee entitled to three (3) weeks vacation shall take at least one (1) vacation week during the slow period in the wintertime as fixed by the Employer, and an employee entitled to four (4) weeks' vacation shall take at least two (2) vacation weeks during the slow period in the wintertime as fixed by the Employer.

(D) In the event one or more holidays occur during the time the employee receives his vacation, he or she shall receive such holiday pay in addition to his or her vacation pay.

(E) Any employee quitting without at least forty-eight (48) hours written notice to the Employer and the Union shall not be entitled to any vacation pay.

## ARTICLE 10 - SICK LEAVE

(A) Each employee with more than ninety (90) days continuous service with the Employer shall receive six (6) days sick leave with pay during each calendar year. No more than two (2) sick leave days may be paid each calendar quarter with no more than one (1) additional sick leave day advanced per calendar quarter.

(B) If any employee does not use his or her sick leave during the course of a calendar year, the employee shall receive a full day's pay for each such day of unused sick leave. Payment for unused sick leave shall be made by the Employer not later than the 15th day of January of each year for the preceding calendar year and shall be at the employee's rate of pay then

- 6 -

prevailing.

(C) Any employee who has worked only part of the calendar year (but) for more than ninety (90) days), shall receive paid sick leave on a pro-rate basis.

(D) Any employee quitting without at least forty-eight (348) hours written notice to the employer shall not be entitled to any unused sick leave.

## ARTICLE 11 - PROMOTIONS

(A) In case of promotion of an employee or employees covered by this Agreement, the principle of seniority shall be applied and the employee or employees with the longest tenure of employment shall be promoted wherever such employees are qualified to do the work.

(B) Should the employee so promoted, prove unsatisfactory during the first four (4) weeks, such employee must be transferred back to his or her previous job.

(C) All employees transferred or promoted temporarily or permanently to a job carrying a higher rate of pay, shall be paid the rate of the new classification.

(D) In the event an employee is transferred to a job for which there is no classification established in this Agreement, the rate of pay for such job shall be established by mutual agreement between the Union and the Employer.

## ARTICLE 12 - LAYOFF, SENIORITY AND RECALL

(A) Employees may be laid off as a result of lack of work and on condition that written notice be sent by the Employer to the Union by facsimile, wherein the Employer sets forth the reason for the layoff. An employee who is laid off shall receive paid sick leave and vacation on a pro-rated basis computed to the day of the layoff.

(B) No new employees are to be hired until all those laid off shall have been rehired. On re-hiring employees previously laid off, employees shall be re-hired in the inverse order of layoff; that is to say, the employees last laid off shall be the first re-hired, wherever such employees are qualified to do the work then available.

(C) Employees to be re-hired shall be given notice by the Employer by certified mail, return receipt requested, at their last known address and a copy of same shall be sent to the Union, giving information as to time and date the employee should return to work.

(D) Any employee who fails to report for work within a period of forty-eight (48)

hours, excluding Saturdays and Sundays, loses ~~his~~ seniority rights unless such failure to report was caused by the employee's illness or other good reason and upon notification to the Employer, such employee will be given additional time to report.

(E) The Employer shall be required to prepare and submit to the Union a seniority list based upon all employee's length of service, including additions and deletions on the list as they occur, and the Union shall be furnished with a revised list every twelve months.

(F) The obligation to rehire employees who have been laid off shall be according to the following schedule:

| LENGTH OF EMPLOYMENT | PERIOD OF AVAILABILITY |
|---|---|
| 3 months to 5 years | six (6) months or period of employment, whichever is less |
| 5 years or more | one (1) year |

## ARTICLE 13 - WELFARE FUND

(A) The Employer agrees to contribute monthly, in the first week of each month, to the UFCW Local 174 Commercial Health Care Fund (Plan A), the following sums per employee per month for all covered employees who have worked at any time during the month after six (6) months employment:

### Family Plan

| Effective Date | Contribution |
|---|---|
| July 1, 2006 | $660.00 per month |
| July 1, 2007 | $740.00 per month |
| July 1, 2008 | $815.00 per month |

### Single Plan

| Effective Date | Contribution |
|---|---|
| July 1, 2006 | $437.00 per month |
| July 1, 2007 | $516.00 per month |
| July 1, 2008 | $591.00 per month |

For a new employee to receive family coverage, he must have worked three (3) years, at which time he must show proof of family to the satisfaction of the Company and the Union. Family to include any dependents (immediate family) .

The Company will begin payment of the Insurance 3 months after starting date of hire.

- 8 -

The employee will not be covered until 6 months after starting date.

(B) Said UFCW Local 174 Commercial Health Care Fund shall be jointly administered by the Employer and the Union and the principal and income thereof shall be used for the sole and exclusive benefit of the employees of the of Employers contributing thereto, and for the employees of the Union, the UFCW Local 174 Commercial Pension Fund and this Fund (provided contributions are made on their behalf), and the families and dependents including the administration and maintenance of said Fund.  The Trustees are authorized to invade and expend the principal of the Fund, if necessary, to provide benefits to the employees, their families and their dependents.

(C) The said UFCW Local 174 Health Care Fund shall have its principal office in the Borough of Manhattan, City and State of New York and shall be administered by a Board of Trustees consisting of an equal number of Employer and Union Trustees in accordance with the Amended and Restated Agreement and Declaration of Trust, dated December 17, 1975, as amended.

(D) The Employer agrees to continue to make contributions to the Health Care Fund for not less than one (1) month on behalf of any employee of the Employer who is disabled, injured in an accident, or suffering from an illness which prevents said employee from working for said Employer.

(E) The Employer hereby agrees to accept the Employer Trustees of the Health Care Fund who may be selected as is provided in this Article as its representatives in the joint administration of said Fund.

(F) It is agreed between the Employer and the Union that should the Employer fail to comply with the terms of this Section, that the Union shall have the right to order a work stoppage of the employees of the Employer, and that such a work stoppage shall not be a breach of this Agreement.

~~(A) The Employer agrees to contribute monthly, in the first week of each month, to both the UFCW Local 174 Commercial Healthcare Fund (Plan A) and to the Local 1245 Benefit Plan Administration the following sums per employee per month for all covered employees who have worked at any time during the month after six (6) months of employment~~

~~Family Plan~~
~~Effective July 1, 2003          $590.00 per month~~
~~Effective July 1, 2004          $590.00 per month~~
~~Effective July 1, 2005          $590.00 per month~~

- 9 -

Single Plan
Effective July 1, 2003         $271.00 per month
Effective July 1, 2004         $295.00 per month
Effective July 1, 2005         $334.00 per month

(B) Said contributions will be allocated between the two Funds as follows:

(a) UFCW Local 174 Commercial Health Care

Family Plan
Effective July 1, 2003         $458.00 per month
Effective July 1, 2004         $508.00 per month*
Effective July 1, 2005         $558.00 per month*

*Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.

Single Coverage
Effective July 1, 2003         $271.00 per month
Effective July 1, 2004         $295.00 per month*
Effective July 1, 2005         $334.00 per month*

*Rates may be increased by up to $25.00 per month in accordance with a call-up to all contributing Employers.

(b) Local 1245 Benefit Plan Administration

Family Plan
Effective July 1, 2003         $132.00 per month
Effective July 1, 2004         $ 82.00 per month*
Effective July 1, 2005         $ 32.00 per month*

*Rates may be decreased as a result of a call-up from the 174 plan.

(C) It is intended that the Employer continue its contribution into the UFCW Local 174 Commercial Health Care Fund and that the employees covered thereunder receive benefits from that Fund in accordance with the contribution rate, the UFCW Local 174 Commercial Health Care Fund (Plan A), and this Collective Bargaining Agreement.

(D) It is intended that additional contribution to the Local 1245 Benefit Plan Administration establish the Employer's rights and obligations as a contributing Employer to that

- 10 -

~~Plan. The parties intend that Employer shall, on or before July 1, 2006, withdraw from coverage and contribution to the UFCW Local 174 Commercial Health Care Fund and contribute fully at the then effective contribution rate to the Local 1245 Benefit Plan Administration with its employees receiving coverages under the Local 1245 Benefit Plan Administration in accordance with that Plan and this Collective Bargaining Agreement. The contributions made by this Employer to the Local 1245 Benefit Plan Administration during the term of this Collective Bargaining Agreement shall be applied as a credit to the Employer's contribution rate at the time the Employer withdraws from the UFCW Local 174 Commercial Health Care Fund and effects coverage under the Local 1245 Benefit Plan Administration.~~

~~(E) In the event the Trustees of the Local 1245 Benefit Plan Administration do not permit this Employer to contribute towards coverage on behalf of its eligible employees, any funds paid under this paragraph to the Local 1245 Benefit Plan Administration shall be refunded to the Employer without interest at such time.~~

## ARTICLE 14 - PENSION FUND

(A) The Employer agrees to contribute monthly within the first week of each calendar month, to the UFCW Local 174 Pension Fund, the following sums per employee per month for all covered employees who have worked at any time during the month after one (1) year of service: $80.00.

(B) The said Local 174 Commercial Pension Fund shall have its principal office in the county of New York, City and State of New York, and shall be administered by a Board of Trustees consisting of an equal number of Employer and Union Trustees in accordance with the Amended and Restated Agreement and Declaration of Trust, dated December 17, 1975, as amended.

(C) Said UFCW Local 174 Commercial Pension Fund shall be jointly administered and the principal and income thereof shall be used for the sole and exclusive benefit of the employees of the employers contributing thereto and for the employees of the Union, the Local 174 Commercial Health Care Fund and this Fund (provided contributions are made on their behalf), and for the payment of all expenses including the administration and maintenance of said Fund. Benefits provided shall be based upon accepted actuarial standards and practices, and in accordance with the Amended and Restated Agreement and Declaration of Trust, the Pension Plan (as amended) and any by-laws, rules and regulations which have been or may hereafter be adopted by the Board of Trustees, and any and all amendments hereto.

## ARTICLE 15 - CONTRIBUTIONS DEFAULT

(A) If the Employer is delinquent or defaults in any contribution or payment due to the

- 11 -

Health Care or Pension Fund, any party to this Agreement, including the Trustees of the Funds to which the contributions are due may initiate action to collect the debt, in which event the Employer shall pay, in addition to the contributions due, all costs and expenses incurred by the initiating party in arbitration and/or court, or in other action and in the enforcement of any award or judgment including but not limited to, reasonable counsel fees, accountants or auditors fees, disbursements, and interest at the rate of 12% per annum to real persons and 20% per annum to corporate entities.

(B) Notwithstanding any other provision of this Agreement, the parties specifically agree that any claim for failure by any Employer to pay any contribution due under this Agreement to any fund may be made and submitted for arbitration by any party hereto and/or by the Trustees of any Fund to which contributions are to be made pursuant to the provisions of this Agreement upon at least twenty (20) days written notice by certified mail to the last address of the Employer on record with the office of the Fund to which contributions are due and to George Sabatella, P.O. Box 245/254 Neptune Station, Brooklyn, NY 11224 as Arbitrator or to such other Arbitrators the parties here to may select. The award of the arbitrator shall be final and binding and enforceable in any court of competent jurisdiction.

(C) The Trustees shall have the authority to audit the payroll books and records of the Employer, either directly or through a qualified public accountant, as they may deem necessary in the administration of the Trust Fund. Such audit may be undertaken pursuant to a routine program or on an individual basis. Whenever an audit is authorized, the Employer involved shall make available to the Trustees, or the qualified public accountant designated by them, its payroll books and records. Such books and records shall include (a) all records which the Employer may be required to maintain under Section 209 (a) (1) of the Employee Retirement Income Security Act of 1974, and (b) time cards, payroll journals, payroll check registers, canceled payroll checks, copies of the Employer's federal, state and local payroll tax report, and all other documents and reports that reflect the hours and wages, or other compensation, of the employees or from which such can be verified. In the event the audit discloses that the Employer has not paid contributions as required by the collective bargaining agreement, the Employer shall be liable for the costs of the audit. The Trustees shall have the authority, however, to waive all or part of such costs for good cause shown.

(D) It is recognized and acknowledged by all parties, including the Employer, that the prompt and accurate payment of contributions is essential to the maintenance of an employee benefit trust fund and the benefit plans and that it would be extremely difficult, if not impossible, to fix the actual expense and damage to the Trust Fund that would result from the failure of an employer to pay the required contributions within the time provided. Therefore, if any employer shall be delinquent in the payment of contributions, such Employer shall be liable, in addition, for liquidated damages of twenty percent (20%) of the amount of the contributions which are owned or twenty-five ($25.00) dollars, whichever is greater. The Trustees shall have the

- 12 -

authority, however, to waive all or part of the liquidated damages or interest for good cause shown.

## ARTICLE 16 - EQUAL OPPORTUNITY AND NON-DISCRIMINATION

There will be no discrimination against any employee or applicant for employment because of race, creed, color, sex, national origin, or age. Where the masculine or feminine gender appears in this Agreement, it is used solely for the purpose of illustration and is not, in any way, used to designate the sex of employees application of this Agreement.

## ARTICLE 17 - EMPLOYEE'S RIGHTS

An employee shall not be required to cross a picket line. The Union may participate in any or all Union activities, strikes and boycotts which may be permitted by existing legislation, or any of its amendments or court decisions.

## ARTICLE 18 - STRIKES OR LOCKOUTS

(A) There shall be no strikes or lockouts for the duration of the Agreement. In the event that the Employer fails to comply with the terms, conditions and provisions contained herein and persists in its refusal to comply therewith, then and in such event, the Employer waives the provisions contained herein, and the Union shall have the privilege of declaring a stoppage.

(B) The Union, its officers, representatives and/or agents shall not be held liable in the event that any of the Articles contained herein shall be found to be inconsistent with any existing Federal or State Legislation, and as a result thereof the Employer sustains loss or damage.

## ARTICLE 19 - DISCHARGE

No employee, except those on a trial period pursuant to this Agreement, shall be discharged except for just cause. In the event of a discharge, the Employer shall notify the Union and the Shop Steward and give reason for same in writing. If the Union disagrees with the discharge, then the grievance shall proceed to arbitration in accordance with the provisions of Article 20 and, if the arbitrator finds that the discharge was without cause, then the employee must be reinstated with back pay and full benefits.

## ARTICLE 20 - GRIEVANCES AND ARBITRATION

(A) All grievances arising between the employees and the employer shall be reported to

the Union. The Employer and the Shop Steward shall try to settle such grievances immediately in the plant. If no shop Steward has been elected by the employees, or if the Shop Steward is unavailable, the grievance shall be referred directly to the Union. Should they not succeed in settling the dispute, the Employer and/or Shop Steward shall notify the Union of the pending grievance. The Union shall immediately try to reach an adjustment within five (5) working days. If no settlement of the grievance has been reached within ten (10) working days thereafter, the matter shall, within forty-five (45) days from the date of the notice of discharge, be referred to the New Jersey State Board of Mediation for arbitration, no matter where the Employer's plant is located. If the matter in dispute is not a discharge, then the matter shall be referred to the New Jersey State Board of Mediation for arbitration within thirty (30) days from the date on which the Union and Employer agree that they are unable to reach an adjustment.

(B) Any employee who shall be required to testify before hearings with regard to arbitration, mediation or the settlement of a dispute, and whose testimony is necessary and material, shall not suffer any loss in wages by reason thereof.

(C) Hearings, whenever possible, shall be held in the afternoon.

(D) Records of the Employer, kept in the normal course of business, are to be made available to the Union, if necessary for the settlement of a grievance.

(E) No claim shall be made with respect to any grievance unless such claim shall be presented to the Employer within thirty (30) days after the employee becomes aware of his or her right to make claim. Illness of the employee will "toll" the thirty (30) day period. No claim shall be made with respect to any grievance for which a monetary remedy is sought unless such claim is made within the fourteen (14) days after the employee becomes aware of his or her right to make a claim.

## ARTICLE 21 - CREDIT UNION

The Employer agrees to implement the Local Union Credit Plan. Deductions are to be made from employee's pay check by the Employer upon presentation of authorization. This credit union plan will be without charge to the Employer.

## ARTICLE 22- SHOP STEWARDS

The Employer shall recognize the Shop Steward elected by its employees or appointed by a paid official of the Union and agrees to meet with and deal with such Shop Steward for the purpose of aiding in the settlement of any disputes which may arise by and between the Employer and the employees. The Shop Steward shall at all times maintain preferred seniority over any and

- 14 -

all other employees irrespective of the term of his employment.

The Shop Steward shall receive one (1) paid day off per contract year to attend a Local 1245 Educational Seminar.

## ARTICLE 23- INDIVIDUAL CONTRACTS

It is hereby understood and agreed by and between the respective parties hereto, that the Employer shall refrain from entering into any agreements with any of its employees in order to modify any of the conditions contained herein.

## ARTICLE 24- PRIOR BENEFITS

This Agreement shall not in any way or manner alter, change or deprive any of the employees of conditions which they are presently enjoying or working under, which conditions may be better than those specified herein, and said employees shall continue to receive such better conditions for the duration of this Agreement.

## ARTICLE 25- UNIFORMS AND TOOLS

The Employer will supply and cause to be laundered, free of charge to all inside employees, coats and aprons. The Employer will also supply whenever necessary rubber boots, oil aprons and freezer coats, jackets blouses, gloves and overalls, where and when needed. These items will be furnished at no cost to the employee.

## ARTICLE 26 - UNION SIGN

The Employer shall display prominently, in its place of business, the Union Shop Card, for the purpose of informing the public that the Employer's establishment is fair to organized labor and that its employees are represented by the Union. However, such Union Shop Card shall remain the property of the Union and shall be surrendered upon failure of the Employer to comply with the provisions of the Agreement.

The Union Shop Card shall be surrendered to the Union upon receipt of written notice sent to the Employer requesting the return of the Union Shop Card.

## ARTICLE 27- UNION VISITATION

The Business Agent or other representative of the Union shall have the right to enter any of the work rooms of the Employer during the time the establishment is open, for the purpose of investigation or for the purpose of discussing with the Employer or its employees any complaint or any other matter affecting the relations between the Employer's employees and the

Union.

## ARTICLE 28- FUNERAL LEAVE

(A) In the event of an employee's inability to report to work because of a death in his or her immediate family, a regular employee shall be allowed up to three (3) days funeral leave with pay at straight time, provided that, if so requested, the employee shall submit to the Employer a photostatic or certified copy of such death certificate of such death and satisfactory proof of the decedent's relationship to the employee.

(B) The term "immediate family", as used herein, shall mean a spouse, parents and children.

## ARTICLE 29- LEAVE OF ABSENCE

Any employee desiring a leave of absence from employment, without pay, shall secure written permission from the Employer. A copy of such permission and schedule shall be sent to the Union. The Employer agrees that permission, for a leave of absence will not be unreasonably withheld taking into consideration both the needs of the Employer and the employee.

## ARTICLE 30- LABOR MANAGEMENT COMMITTEE

The Union shall select a committee of three (3) workers to meet with the Company's designee to review and recommend corrections in Health, Safety and other conditions that effect the workers in the plant. Such meeting shall be on a monthly basis, not to exceed one (1) hour per month.

## ARTICLE 31- CORPORATION OR PARTNERSHIP

If the Employer be or become a corporation, this Agreement shall affect all the workers in the employer's business whether such employees be stockholders or not, and all such workers are included in the term "Employee" as used in this Agreement. Whether the Employer be an individual, or partnership, or a corporation, no one, however connected with the Employer, shall be permitted to work more than the weekly number of hours provided for the members of the' Union. Whether the Employer be a corporation or partnership, only one person having an ownership interest in the Company shall be permitted to work in the manufacturing or processing department of the Employer's business, and such person must be designated by the Employer at the signing of the contract. All such employees shall be Union members regardless of whether they are blood relations of the Employer, and in case of the Employer being a corporation, whether such employees are blood relations of any officer or officers of the corporation. Working foremen shall not be permitted to do manual work for longer hours of labor than those provided

for employees working under their supervision, except as mutually agreed upon by the Union and the Employer.

## ARTICLE 32- REAL PARTY IN INTEREST

It is mutually agreed that the Union is the real party in interest under the terms of this Agreement with respect to the proper enforcement of any of its provisions, and no individual member of the Union may take any action with reference to any subject matter covered by this Agreement without the consent of the Union. No member of the Union shall have the right to institute any legal proceedings in any sort or before any administrative tribunal against an Employer, on account of any matter directly or indirectly arising out of this Agreement or for the alleged breach thereof, without the written consent of the Union.

## ARTICLE 33- SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon the parties herein, and their successors and assigns, and no provision herein contained shall be nullified or affected in any manner as a result of any consolidation, sale, transfer or assignment of the parties herein, or by any change to any other form of business organizations, or by any change geographical or otherwise, in the location of the parties herein. The parties agree that they will not conclude any of the above transactions unless an agreement has been entered into as a result of which this Agreement shall continue to be binding on the person or persons or any business organization continuing the business. It is the intent of the parties that this Agreement shall remain in effect for the full term hereof regardless of any change of any kind in the management, location, form of business organization or ownership.

## ARTICLE 34- SEPARABILITY

It is the express purpose and intent of the parties hereto that this Agreement shall conform in all respects to existing and future Federal and State Legislation. Should any modification become necessary in order to effect such compliance, this Agreement shall be deemed to be automatically modified in that respect. However, all other provisions contained herein shall remain unaltered.

## ARTICLE 35- REOPENING OF CONTRACT

Upon the expiration of three (3) years from the effective date of this Agreement, the Union may reopen the Agreement as to wages, hours, working conditions, and general fringe benefits, upon serving sixty (60) days written notice to the other party.

In the event of a reopening of the Agreement, if the parties hereto are unable to reach a

subsequent Agreement, Article 17 of this Agreement shall be inoperative.

~~ARTICLE 36 - SAFETY AND HEALTH~~

~~The Employer will provide and install a room air conditioner in the employees'~~
~~lunchroom.~~

## ARTICLE 37 6 - DURATION OF AGREEMENT

This Agreement shall be in force from July 1, 2003 6 to June 30, 2006 9 and shall be deemed automatically renewed from month to month thereafter, unless either party hereto serves upon the other notice of termination or proposed modifications at least sixty (60) days in advance of the termination of this Agreement or during any period of automatic extension.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto and they have affixed their respective signatures by their duly authorized officers, the day and year first written.

**IDEAL PLASTIC CONTAINER CO.**

**UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 1245**

By:_____

By:_____

Title:_____

Title:_____

Date:_____

Date:_____

- 18 -

EXHIBIT"2"



## UFCW Local 342/174 Affiliated Trust Funds

166 East Jericho Turnpike Mineola, NY 11501 Ph. 516-747-5980 Fax 516-294-4608

VIA CERTIFIED AND REGULAR MAIL
RETURN RECEIPT REQUESTED

January 9, 2008

Employer 0516

Ideal Plastics
80 South Dean Street
Englewood, New Jersey 07631

RE:  Local 342 Pension Fund                          Local 342 Health Care Fund
     Local 342 Safety Education & Cultural Fund    Local 1 Joint Retirement Fund
     Local 342 Legal Fund                         Local 50 Pension Fund
     Local 342 Annuity Fund                       Local 635 Smoked Fish Retirement Fund
     Local 635 Fish, Seafood Workers Retirement Fund
     X Local 174 Commercial Healthcare Fund       X Local 174 Commercial Pension Fund

Dear Gentlemen:

PLEASE TAKE NOTICE that, pursuant to the terms of the collective bargaining agreement between U. F.C.W. Local 342, AFL-CIO ("the Union") and your company, the Union/Fund hereby submits to arbitration the dispute concerning your failure and/or refusal to make proper and timely contributions and remit required reports to the above referenced Funds.

PLEASE TAKE FURTHER NOTICE that, pursuant to the provisions of the Employee Retirement Income Security Act of 1974, as amended, and the collective bargaining agreement, the Union/Fund will seek, at the arbitration hearing, an award of the contributions due, together with interest, liquidated damages, the costs of the arbitration, including the arbitrator's fee, attorneys' fees and injunctive relief.

PLEASE TAKE FURTHER NOTICE that a copy of this demand is being filed with John Kennedy, the Arbitrator designated under the collective bargaining agreement, with a request that he hold the hearing of this matter on January 30, 2008 at 9:00 AM. at the offices of the Union/Fund, 166 East Jericho Turnpike, Mineola, New York, 11501. If your company fails to appear at the date and time specified herein, the Union/Fund will request that the Arbitrator proceed, notwithstanding the company's absence, to determine the controversy upon the evidence produced.

PLEASE TAKE FURTHER NOTICE that, pursuant to the provisions of C.P.L.R. 67503 (c), unless you apply to stay the arbitration within twenty (20) days of service of this Notice, you shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with, and from asserting in court the bar of any limitation of time.

Very truly yours,

Funds Financial Administrator

cc:  William Clarke, Arbitrator
     Andrew Calcagno, Esq.